UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The Robert Weiler, Co., *et al.*,

    Plaintiff,

-v-                                                                Case No. 2:07-cv-760

Kingston Township, Ohio, *et al.*,            Judge Michael H. Watson

    Defendant.

## OPINION AND ORDER

Plaintiffs, The Robert Weiler Company, Robert J. Weiler, and Siemer Land LLC, (collectively, "Weiler" or "plaintiffs"), assert claims under 42 U.S.C. § 1983, alleging, *inter alia*, that Defendants, Kingston Township Ohio, Kingston Township Board of Trustees, Kingston Township Zoning Commission, and individual Kingston Township trustees and members of the Kingston Township Zoning Commission (collectively, "the Township" or "defendants") deprived plaintiffs of property and liberty interests under color of law without substantive or procedural due process and subjected plaintiffs to unequal treatment under color of law and in retaliation for Weiler's exercise of its First Amendment rights.

This matter comes before the Court on defendants' motion to dismiss (Doc. 32) for lack of subject matter pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3). The Court held an oral hearing on this motion on October 29, 2008. For the following reasons, the Court denies defendants' motion to dismiss.

## I. BACKGROUND

Weiler, a property development and management company, and Siemer, a real estate company, have their respective principal places of business at 41 S. High Street, Columbus, Ohio.

The Township is a political subdivision created pursuant to Title Five of the Ohio Revised Code. Ohio Rev. Code § 501, *et seq*. The Board is a governing body of the township and the named individual trustees[1] serve on the Board. Ohio Rev. Code § 505, *et seq*. The Commission is created by the Board and the named individual members[2] serve on this Commission. Ohio Rev. Code § 519, *et seq*. Title Five, section 519 enumerates the various procedures, regulations, and the enforcement thereof, regarding township zoning. *Id*.

### A. The Pastures

This dispute involves the zoning of 605 acres in Kingston Township, Delaware County, Ohio, at the corner of Blue Church Road and Rosecrans Road (parcel #51740003025000) commonly known as "the Pastures". Pursuant to a preliminary subdivision plat approved by the Delaware County Regional Planning Commission in 2005 and under its current Farm Residential District ("FR-1") zoning, the Pastures may

---

[1] Named in this lawsuit are John Fink (Kingston Township Trustee in his individual and official capacity) and Dan Basham (Kingston Township Trustee in his individual and official capacity).

[2] Named in this lawsuit are Jeanna Burrell (Member of the Kingston Township Zoning Commission in her individual and official capacity), Craig Cope (Member of the Kingston Township Zoning Commission in her individual and official capacity), Jim Grove (Member of the Kingston Township Zoning Commission in his individual and official capacity), Dewey Akers (Member of the Kingston Township Zoning Commission in his individual and official capacity), and Doug Harsany (Member of the Kingston Township Zoning Commission in his individual and official capacity).

be developed into 251 single family, 2.1 acre lots.

In June 2006, however, Weiler submitted a rezoning application to the Kingston Township Zoning Commission ("the Commission") seeking to rezone the Pastures from FR-1 to a Planned Residence District ("PRD"). Weiler's proposal slotted the Pastures for 310 single family lots at a minimum one-half acre size and preserved over 65% of the land for open spaces under ownership of the homeowners' association. At the time this rezoning application was submitted, the Township zoning resolution in effect provided flexible density limits for property zoned PRD.

Plaintiffs submitted a rezoning application to the Commission[3] in June 2006 seeking to rezone the Pastures from a FR-1 to a Planned Residence District ("PRD"). The Commission accepted the Pasture application and held a public hearing. Members of the Commission expressed concern over the plans' setback and lot requirements. Subsequently, the Commission recommended the Board deny the rezoning application. Plaintiffs then voluntarily withdrew their application.

On November 15, 2006, the Commission recommended to the Board that a moratorium be enacted on the acceptance of PRD zoning applications. On January 3, 2007, one week after the application was withdrawn, the Board adopted a six-month moratorium ("the moratorium") on accepting PRD rezoning applications. The moratorium began on January 3, 2007, and ended on July 3, 2007. During the moratorium, plaintiffs twice tried to submit their application. On May 4 and May 25,

---

[3]Prior to the current dispute, plaintiffs and defendants were involved in another litigation over a property commonly referred to as the Northstar Development ("Northstar"). The case proceeded to the Supreme Court of Ohio on a mandamus action that invalidated a referendum petition to revoke Northstar's rezoning. This litigation deteriorated the relationship between Weiler and the Board and Commission.

2007, plaintiffs submitted a revised rezoning application for the Pastures. The Commission refused to accept the application and by letter, denied the application.

While the moratorium was in place and after the defendants refused to accept the application, the Board and the Commission revised the zoning resolution to implement density limits for properties zoned PRD; the density limits are identical to the density limits in FR-1 zoned property.

The plaintiffs have not resubmitted their application since the moratorium ended on July 3, 2007.

### B. The Plaintiffs' Claims

Plaintiffs filed their complaint on August 3, 2007, alleging a deprivation of property and liberty interests without procedural or substantive due process of law, retaliation in violation of the First Amendment, violation of equal protection of law, and seeking a declaratory judgment and injunction that Kingston does not have the power to impose a moratorium on the acceptance of applications to rezone property. See Pl.'s Am. Compl. p. 9-14.

### II. STANDARD OF REVIEW

Defendants move to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction. The Supreme Court has explained that subject matter jurisdiction is a threshold determination. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998); American Telecom Co., L.L.C. v. Republic of Lebanon, 501 F.3d 534 (6th Cir. 2007). "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." Gentek Bldg. Prods. v. Sherwin-Williams Claims, 491 F.3d 320, 330 (6th Cir.

2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* "When reviewing a facial attack, a district court takes the allegations in the complaint as true. . . . If those allegations establish federal claims, jurisdiction exists." *Id.* "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). Because defendants do not dispute the facts underlying plaintiffs' complaint, they present a facial challenge, as opposed to a factual challenge, to federal subject matter jurisdiction. *See generally RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134-35 (6th Cir. 1996).

## III. DISCUSSION

Defendants seek dismissal of plaintiffs' claims arguing the Court lacks subject matter jurisdiction because the claims are unripe and because the Court should abstain from entertaining land cases arising under 42 U.S.C. § 1983 ("§ 1983"). Furthermore, defendants contend that plaintiffs' claims arising under § 1983 amount to a takings claim and should be analyzed under the purview of a takings case.

Since defendants dispute only subject matter jurisdiction, and do not assert failure to state a claim, the Court will restrict its ruling to whether the Court has jurisdiction over the alleged six counts for violations of procedural and substantive due process, equal protection, and retaliation in violation of the First Amendment, pursuant to § 1983, as well as claims for declaratory and injunctive relief.

## A. Nature of the Claim and Ripeness

The ripeness doctrine "focuses on the timing of the action." *See United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003). Ripeness "draw[s] both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation and internal quotation marks omitted). Enforcing ripeness discourages "premature adjudication" of legal questions and judicial entanglement in abstract controversies. *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). "[It] is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *River City Capital, L.P. v. Bd. of County Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007) (citation and internal quotation marks omitted).

In this case, defendants assert plaintiffs' § 1983 claims amount to a Fifth Amendment Takings claim, and thus under *Williamson County Regional Planning Commission, et al. v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), are not ripe for review as plaintiffs did not resubmit their zoning application to defendants after the moratorium ended. Defendants conclude no final decision has ever been reached regarding plaintiffs' property and plaintiffs have not availed themselves of the procedures available under Ohio law, specifically inverse condemnation proceedings, for just compensation. Defendants then cite several Sixth Circuit decisions asserting a

takings case[4] is not ripe for adjudication until a final decision is rendered by the government entity with authority to implement the regulations.

Plaintiffs, however, dispute the characterization of their claims as "takings" claims, and assert their procedural and substantive due process claims are immediately cognizable in federal court pursuant to Nasierowski Brothers Investment Company v. City of Sterling Heights, 949 F.2d 890 (6th Cir. 1991). Plaintiffs refer to their complaint which alleges six counts for violations of procedural and substantive due process, equal protection, and retaliation in violation of the First Amendment, pursuant to § 1983, as well as claims for declaratory and injunctive relief. Plaintiffs contend that the Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Plaintiffs assert that Williamson and its progeny are inapplicable because plaintiffs' claims do not arise from, nor have plaintiffs asserted, a taking.

Defendants rely primarily on Williamson. In Williamson, the owner of a plat of land filed suit in federal court against the county planning commission and others, alleging the defendants took its property without just compensation. The land owner in Williamson submitted a preliminary plan for developing its property to the commission. After several revised preliminary plans, the commission responded with objections to the revised plan. The land owner did not seek variances from the commission, which if

---

[4]The Court notes defense counsel conceded at the oral hearing on this motion that if the Court did not find plaintiffs' claims as takings claims, the Williamson case's requirements are inapplicable. See Hr'g Tr. p. 26-7.

permitted, would have allowed the respondents to build its property in accordance with its proposed plan.

Because of this, the Court reasoned the respondents' claims were not ripe for review as it had not obtained a final decision from the commission regarding how it would be allowed to develop its property. *Williamson*, 473 U.S. at 191. The Court reasoned, "until the [c]ommission determines that no variances would be granted, it is impossible to find . . . whether respondent will be unable to derive economic benefit from the land and is therefore not a final reviewable decision." *Id.* at 191-94. The Supreme Court reiterated the rule that "a claim that the application of government regulations effects a taking of property interest is not ripe until the government entity charged with implementing the regulation has reached a final decision regarding application of the regulations to the property at issue." *Id.* at 186-87 (citations omitted).

The Court further held the takings claim was not ripe because respondent had not sought compensation through the procedures available in or from the State of Tennessee. If a state provides an adequate procedure for seeking just compensation (and in that case Tennessee law provided for inverse condemnation actions), the Court reasoned, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied compensation. *Id.* at 194.

Thus the Supreme Court in *Williamson* held takings claims are not ripe in zoning cases until (1) the government entity charged with implementing the regulation has reached a final decision regarding application of the regulations to the property at issue (finality), and (2) the property owner has used the reasonable, certain, and appropriate state procedure for seeking just compensation, such as inverse condemnation

procedures (exhaustion of state remedies). *See also Braun v. Ann Arbor Charter Township*, 519 F.3d 564, 569 (6th Cir. 2008) (dismissing takings claim as unripe under *Williamson* and dismissing procedural due process claim finding since it was ancillary to the takings claim, it was subject to the same state exhaustion requirements).

In this case, however, plaintiffs do not allege a taking. As the Court is required to accept the allegations in the complaint as true and in the light most favorable to the plaintiffs, plaintiffs have alleged their claims derive from defendants' failure to accept plaintiffs' zoning application or to hold a public hearing, the procedures enumerated in Ohio Revised Code § 519.12.[5] As plaintiffs allege, defendants enacted the moratorium and then subsequently refused to accept plaintiffs' zoning application, in violation of procedural and substantive due process and equal protection, and in retaliation for plaintiffs' exercise of their First Amendment rights. The Court finds the plaintiffs do not assert a takings claim, nor do they allege a deprivation of all economic benefit of its property by an adverse zoning decision (amounting to a regulatory taking).

Now that the Court has determined the claims are not takings claims, the Court will next consider whether the finality and exhaustion requirements of *Williamson* apply

---

[5]Ohio Rev. Code § 519.12(A)(1) authorizes a property owner to seek an amendment to its zoning resolution by filing an application with the township zoning commission. "Upon . . . the filing of an application by property owners . . . with the commission, the commission **shall** set a date for a public hearing, which date shall not be less than twenty nor more than forty days from . . . the date of the filing of such an application." Ohio Rev. Code § 519.12(A)(2) (emphasis added). Plaintiffs' complaint alleges Weiler submitted a rezoning application with the Commission on May 4, 2007, and again on May 25, 2007. In correspondence dated May 29, 2007, Dave Stites, on behalf of the Commission, refused to accept the application, process the application, and provide a public hearing because of the moratorium. Pl.'s Compl. ¶ 55. Plaintiffs allege defendants exceeded their authority and violated Ohio law in refusing to accept the application and hold a hearing. Plaintiffs allege the defendants' moratorium coupled with the Commission's refusal to accept the rezoning application and refusal to provide a public hearing denied plaintiffs process as guaranteed under Ohio law in violation of procedural and substantive due process as required by the Constitution.

to plaintiffs' procedural and substantive due process claims.

"Whether finality is required in any given case depends upon the type of harm alleged: 'If the injury the [plaintiffs] seek to redress is harm to their property amounting to a 'deprivation' in constitutional terms, a final judgment is required; however, if the injury is the infirmity of the process, neither a final judgment nor exhaustion is required.'" *Bowers v. City of Flint*, 325 F.3d 758, 762 (6th Cir. 2003) (quoting *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989)).

The Sixth Circuit addressed whether *Williamson*'s finality and exhaustion requirements applied to a procedural due process claim in *Nasierowski*. *Nasierowski*, 949 F.2d at 890. In *Nasierowski*, a land development investment company's property was rezoned by the city planning commission without affording the plaintiff a public hearing and opportunity to object as required under Michigan law. The plaintiff did not apply to the city appeals board for a variance from the new zoning restriction, and instead immediately filed suit in federal court. The plaintiff alleged, *inter alia*, he was denied procedural due process in violation of the Fourteenth Amendment when the commission amended the zoning without a hearing. The district court rejected Nasierowski's procedural due process claim for failure to exhaust his administrative remedies as was required under *Williamson*.

The Sixth Circuit, however, found the district court's reliance on *Williamson* was improper because Nasierowski did not allege a taking, and instead alleged he was deprived of procedural due process when he was not given a public hearing to challenge the reclassification of his property. The court opined that "there are many intangible rights that merit the protection of procedural due process although their

infringement falls short of an exercise of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendment." *Nasierowski*, 949 F.2d at 894 (quoting *Landmark Land Co. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989)).

The Sixth Circuit held:

> a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency. . . . "if the [claimed] injury is the *infirmity of the process* neither a final judgment nor exhaustion [of administrative remedies] is required." . . . Conceptually, in the case of a procedural due process claim, "the allegedly infirm process is an injury itself," . . . whereas, in the context of a takings claim, the alleged injury-a diminution in property value-cannot be assessed with any degree of certainty until the municipality arrives at a final decision as to how the property owner will be permitted to develop his property.

*Nasierowski*, 949 F.2d at 894 (quoting *Hammond*, 866 F.2d at 176 (citing *Williamson*, 473 U.S. at 194)). *See also Wedgewood Limited Partnership I v. Township of Liberty, Ohio*, 456 F. Supp. 2d 904, 919-23 (S.D. Ohio, Oct. 12, 2006) (J. Marbley) (finding plaintiff did not allege a takings claim and thus the finality and exhaustion requirements of *Williamson* did not apply to the due process claims).

In this case and as alleged by Weiler, Weiler's procedural due process injury accrued and attached when the Commission, under the auspices of the moratorium,[6] refused to accept its application, refused to schedule a hearing, and refused to evaluate the application under the zoning resolution in effect at that time, as required by Ohio law, notwithstanding the absence of a final decision by the Commission concerning the zoning of the property. The refusal to even accept the application, as required under

---

[6] During which, the Court notes, PRD zoning was restricted from flexible density to density limits. Properties now zoned PRD have identical density limits as properties zoned FR-1.

Ohio law, was the final decision. Thus as alleged, plaintiffs were injured when denied process as guaranteed by Ohio law and denied a final decision on the merits of their application.

Counts one and two[7] of plaintiffs' complaint allege that defendant violated plaintiffs' due process rights by arbitrarily, capriciously, and willfully violating controlling Ohio law. These counts are pure due process claims. Consequently, under the rule promulgated by the Sixth Circuit in *Nasierowski*, the Court finds that plaintiffs need not comply with the exhaustion and finality requirements of *Williamson*. Accordingly, the Court finds these claims are ripe for review.

## B. Abstention

Defendants also argue the Court should abstain from exercising jurisdiction over this case. Defendants assert the primary issue in this case is whether an Ohio township has the authority to enact a moratorium, and as such, should be left to the courts of the State of Ohio to decide. The defendants cite several cases from other circuits in which courts have declined to hear zoning disputes finding such disputes to be within the domain of the states. They fail, however, to cite any precedent from the Sixth Circuit.

Plaintiffs contend the *Pullman* abstention doctrine does not apply in this case

---

[7] The Court notes defendants do not challenge the subject matter jurisdiction of the equal protection claim or the retaliation in violation of the First Amendment claim, merely they assert such claims are ancillary to the takings claim and thus subject to the *Williamson* requirements under *Braun*. *Braun*, 519 F.3d at 569. As the Court found the plaintiffs do not assert a takings claim, the equal protection claim and the retaliation in violation of the First Amendment claim are not subject to dismissal as ancillary to a takings claim. Instead, both claims allege defendants' motivation in passing the moratorium was specifically targeted at plaintiffs and subjected plaintiffs to unequal treatment and retaliation. As such, the Court has "arising under" jurisdiction.

and the Court should not abstain from the exercise of federal jurisdiction. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). In interpreting *Pullman* in the context of zoning decisions, plaintiffs point to *Fifth Column, LLC v. Village of Valley View*, 221 F.3d 1334, 2000 WL 799785 (6th Cir. 2000) (unreported).

"The *Pullman* abstention doctrine requires that 'when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a constitutional question.'" *Assoc. General Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730 (6th Cir. 2000) (quoting *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975). Abstention is, however, "a limited exception to the 'virtually unflagging' obligation of federal courts to exercise the jurisdiction given them." *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 968 (6th Cir. 1999) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, & 817 (1976)). There are two requirements for *Pullman* abstention: 1) an unclear state law and 2) the likelihood that a clarification of the state law would obviate the necessity of deciding the federal claim question. *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983).

Defendants assert Ohio law regarding whether or not an Ohio township has authority to enact a moratorium is an unclear state law, and clarification of this law would eliminate the need to decide the constitutional issues. Defendants argue, if the Township had the authority to enact the moratorium, then there was no harm in not accepting Weiler's zoning application and the federal claims would fall away.

Plaintiffs retort that no unclear state law exists, arguing townships have only the

powers conferred to them by the Ohio General Assembly. Thus, plaintiffs assert, defendants exceed such power in enacting the moratorium and failing to follow the zoning application procedures specifically required under Ohio state law. As such, plaintiffs argue the statute mandating procedures for zoning applications, Ohio Rev. Code § 519.12, is neither ambiguous nor unclear.

In *Fifth Column*, the Sixth Circuit affirmed the district court's rejection of the defendant Village's abstention request. *Fifth Column*, 2000 WL at *1. The Village enacted an adult entertainment business ordinance, admittedly without following the procedures requiring that a zoning ordinance be submitted to the planning commission and that a public hearing be held after thirty days' notice, as proscribed under the Ohio Revised Code. *Id.*

The ordinance was being challenged on constitutional grounds under § 1983, however, the Village argued the court should abstain pursuant to *Pullman* from interpreting the Ohio statutes under principles of comity. *Id.* at *4. The court declined finding the Ohio statutes were not unclear as the statutes' procedures were straightforward and no question of Ohio law was determinative of the proceedings. *Id.* at *5.

"[T]ownships are creatures of the law and have only such authority as is conferred on them by law." *State ex rel. Schramm v. Ayres*, 158 Ohio St. 30, 33 (1952); *see also Board of Tp. Trustees of Bainbridge Tp. v. Funtime, Inc.*, 55 Ohio St.3d 106 (1990). As in *Fifth Column*, while the case involves a zoning ordinance, the heart of the issue involves statutorily prescribed procedure. The Ohio statutes at issue are not unclear and no clarification of the state law would obviate the necessity of deciding the

federal claim questions. Plaintiffs claims taken as true allege defendants exceed their statutory authority by enacting a moratorium and failing to comply with Ohio Rev. Code § 519.12 in processing their zoning application. Thus, the question before the court is whether Ohio Rev. Code § 519.12 allocates specific procedures to which plaintiffs are entitled, not whether the moratorium is legal. Accordingly, the Court declines to abstain from deciding the matter.

### C. Stay of Discovery

"The Court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). Furthermore, Federal Rule of Civil Procedure 26(d) allocates to this Court the discretion to control the timing and sequence of discovery. The Court's Case Management Procedures § C, however, specifically state that neither counsel nor the parties shall presume that a pending motion to dismiss relieves them of their obligation to conduct discovery within the deadlines set forth by the case schedule. Accordingly, as the preliminary subject matter jurisdiction issue has been resolved, the Court finds no reason discovery shall not proceed as set forth in the case schedule.

## IV. CONCLUSION

Defendants' motion to dismiss for lack of subject matter jurisdiction (Doc. 32) is **DENIED**. Discovery shall proceed as set forth in the case schedule. A case management schedule setting the matter for trial will follow this Order.

Plaintiffs' motion for leave to file sur-reply (Doc. 53) is **DENIED**.

**IT IS SO ORDERED.**

_____
Michael H. Watson, Judge
United States District Court